UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID M. CAMERON, | ) | CASE NO.: 1:08CV1178 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| WARDEN, | ) | **REPORT AND RECOMMENDATION** |
| Lake Erie Correctional Institution,[1] | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Respondent. | ) | |

Pursuant to 28 U.S.C. § 2254, Petitioner David Cameron ("Petitioner") is challenging his conviction for tampering with evidence in violation of Ohio Revised Code ("O.R.C.") § 2921.12(A)(1). ECF Dkt. #1. On July 7, 2008, the case was referred to the undersigned for a Report and Recommendation. For the following reasons, the undersigned recommends that the Court DISMISS the instant petition in its entirety with prejudice:

**I.    JURISDICTION**

Petitioner has notified the undersigned that he has been released from custody subsequent to filing the instant petition. The undersigned recommends that the Court find that it has

---

[1] Although Petitioner filed the instant suit against the Attorney General of Ohio (ECF Dkt. # 1), Respondent lists the "State of Ohio" in its caption with no explanation for the change. ECF Dkt. #11 at 1. But, "[u]nder no circumstances is the State of Ohio the proper respondent." *Ortiz v. Karnes*, No. 2:06-cv-777, 2007 WL 2137943 at *3-*4 (S.D.Ohio July 23, 2007) unreported. In the context of a 28 U.S.C. § 2255 petition, the United States Supreme Court has held that "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The *Padilla* court additionally noted that Congress has authorized § 2254 petitioners challenging present physical custody to name either the warden or the chief state penal officer as a respondent. *Id.* at n. 18. In Ohio, the chief state penal officer is the Director of the Department of Rehabilitation and Corrections, not the Attorney General. *See State v. Miles*, Case No. 3341, 1988 WL 70508 at *1, (Ohio App. 5th Dist. June 28, 1988), unreported. Therefore, the proper defendant in this case is the warden of the Lake Erie Correctional Institution.

jurisdiction to rule upon Petitioner's case. "For the purposes of the habeas statutes, a petitioner need only be 'in custody' at the time the petition was filed." *Rosales-Garcia v. Holland*, 322 F.3d 386, n. 2 (6th Cir. 2003). The United States Supreme Court has stated that:

> The more substantial question, however, is whether petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, § 2, of the Constitution. . . Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole-some 'collateral consequence' of the conviction-must exist if the suit is to be maintained. In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur).

*Spencer v. Kemna* 523 U.S. 1, 7-8 (1998) (internal citation omitted). The fact that Petitioner filed the instant petition while incarcerated satisfies the AEDPA's "in custody" requirement and the fact that he challenges the constitutionality of his conviction satisfies the Article III case or controversy requirement for jurisdiction. Therefore, the Court should find that it has jurisdiction to rule upon the instant petition.

## II.   FACTS

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999). The relevant facts as set forth by the Eleventh District Court of Appeals are:

> {¶ 2} Patrice Daemons lived in a house in Mentor with her father and her adult sons, Joseph and Matthew Traz. This house is located at 7299 Burridge Avenue. Burridge Avenue is a residential street that intersects with Mentor Avenue. Eventually, Cameron moved into the house.FN1 In September 2007, Daemons and Cameron were not getting along, and Daemons was staying with her adult daughter at her house in another city. On September 7, 2006, Daemons was planning to go to the Mentor house to get some of her belongings. Joseph Traz asked Cameron to leave the house so Daemons could get her things. Cameron left the house.
>
> > FN1. While different people lived at 7299 Burridge Avenue at different times, we will refer to this residence as Daemons' house for the purposes of this opinion.
>
> {¶ 3} Daemons arrived at the Mentor house with her daughter and her daughter's children. While Daemons was there, Cameron returned to Daemons' house in an intoxicated condition. Cameron and Daemons began arguing. Then, in the upstairs hallway, Cameron pulled out a knife in front of several people, including Daemons'

nine-year-old grandson. Joseph Traz and others separated Cameron from the boy and took the boy downstairs. Next, Cameron entered Daemons' bedroom with her, and he shut and locked the bedroom door. In the bedroom, Cameron threatened Daemons with the knife. Specifically, he told her he would kill her and anyone who came between them.

{¶ 4} After hearing Cameron threaten Daemons, Joseph Traz forcefully kicked the bedroom door. The kick startled Cameron, and Daemons was able to open the door. In the hallway, Cameron attempted to "jab" Joseph Traz with the knife, but was unsuccessful, and Joseph Traz eluded the attack. Joseph Traz escaped, ran down the stairs, and called 9-1-1.

{¶ 5} While Joseph Traz was on the phone with authorities, Cameron left the house and ran to a neighbor's house, which is immediately southeast of Daemons' house. Cameron had a brief argument with the neighbor about Cameron wanting to come in the house. Then, Cameron ran to the back of the neighbor's house. At that time, Cameron disappeared from Joseph Traz's view. Per the dispatcher's instructions, Joseph Traz stayed at Daemons' house when Cameron left.

{¶ 6} Within minutes, Officer Mike Orf of the Mentor Police Department arrived at Daemons' house. By that time, Cameron had returned to the front yard of the house. Officer Orf placed Cameron under arrest. Officer Orf conducted a pat-down search of Cameron, which revealed no weapons. Officer Orf read Cameron the Miranda warnings. See Miranda v. Arizona (1966), 384 U.S. 436. Cameron indicated he understood the warnings.

{¶ 7} Officer Orf interviewed some of the witnesses at Daemons' house, including Joseph Traz and Daemons. Thereafter, Officer Orf went to look for the knife behind local businesses on nearby Mentor Avenue. Officer Orf found the knife in a dumpster of a closed business at 8661 Mentor Avenue. At trial, Joseph Traz and Daemons identified this knife as the knife Cameron used to threaten them.

{¶ 8} After finding the knife, Officer Orf again read Cameron the Miranda warnings. Then he questioned Cameron about the knife. Cameron admitted the knife was his, but he denied placing the knife in the dumpster. Cameron suggested other people put the knife in the dumpster to get back at him. Also, Cameron denied threatening anyone with the knife, but he later stated that he might have used the knife for protection.

{¶ 9} Cameron was indicted on two counts of felonious assault, in violation of R.C. 2903.11(A)(2) and second-degree felonies; two counts of aggravated menacing, in violation of R.C. 2903.21 and first-degree misdemeanors; one count of tampering with evidence, in violation of R.C. 2921.12(A)(1) and a third-degree felony; and one count of unlawful restraint, in violation of R.C. 2905.03, a third-degree misdemeanor.

{¶ 10} Cameron pled not guilty to all of the charges, and a jury trial was held. At the beginning of trial, the state apparently dismissed the misdemeanor charges against Cameron. That portion of the proceedings is not included in the transcript filed with this court. However, the state's brief acknowledges that the charges were dismissed, and the trial court's judgment entry refers to an amended indictment.

{¶ 11} The state presented evidence regarding the remaining charges of tampering with evidence and felonious assault. After the state's case-in-chief, Cameron moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion. Cameron called Thomas Butler as a defense witness. Butler is an acquaintance of Cameron and Daemons. Butler testified that, before the incident in question, he heard Daemons say

> she wanted Cameron out of the house and she would do whatever it took to get him out. Butler further testified that, after the incident, Daemons said she had figured out a way to get Cameron out of the house and she was very happy about it.
>
> {¶ 12} The jury found Cameron not guilty of the two felonious assault charges. However, the jury found Cameron guilty on the tampering with evidence charge. The trial court imposed a two-year prison sentence on Cameron for his conviction for tampering with evidence.

ECF Dkt. #11, Ex. 7 at 1-5; *State v. Cameron*, Case No. 207-L-004, 2007 WL 4481384 at *1-*2 (Ohio App. 11 Dist. Dec. 21, 2007), unreported.

### III. PROCEDURAL HISTORY

#### A. Trial Court

On October 25, 2006, the Lake County, Ohio prosecuting attorney filed an indictment that had been returned by the Grand Jury, charging Petitioner with: (Count 1) Felonious Assault against Patrice Demons, in violation of O.R.C. § 2903.11(A)(2); (Count 2) Felonious Assault against Joseph A. Traz, in violation of O.R.C. § 2903.11(A)(2); (Count 3) Aggravated Menacing to Matthew P. Traz, in violation of § 2903.21; (Count 4) Aggravated Menacing to Stephanie A. Traz, in violation of § 2903.21; and (Count 5) Tampering with Evidence, in violation of O.R.C. § 2903.21. ECF Dkt. #11, Ex. 1.

Prior to trial, the state dismissed Counts 3 and 4, and the Court renumbered Count 5, Tampering with Evidence, as Count 3. ECF Dkt. #11, Ex. 2. The matter proceeded to a jury trial, and the jury found Petitioner guilty of Count 3, as amended, and not guilty of Counts 1 and 2. *Id*. The court sentenced Petitioner to two years of imprisonment. ECF Dkt. #11, Ex. 3.

#### B. Direct Appeal

On July 2, 2007, Petitioner filed a brief in support of his direct appeal, raising the following assignments of error:[2]

1. The trial court prejudicially erred when it permitted the interrogating police officer to testify about what the appellant said during a custodial interrogation where the appellant did not voluntarily, knowingly, and intelligently waive his *Miranda* right to remain silent or his Fifth Amendment right against self-

---

[2] It appears that Respondent has not furnished Petitioner's notice of appeal. Counsel is advised to furnish certificates of appeal in future cases for the sake of completeness.

       incrimination.

2. Defense counsel rendered ineffective assistance of trial counsel in violation of defendant's federal and state constitutional rights.

3. The trial court prejudicially erred because its verdict was based upon insufficient evidence.

4. The trial court prejudicially erred because its verdict was against the manifest weight of evidence.

ECF Dkt. #11, Ex. 4. On December 24, 2007, the appellate court denied the appeal and affirmed Petitioner's conviction. ECF Dkt. #11, Ex. 7.

    **C.**    **Supreme Court of Ohio - Motion for Delayed Appeal**

On March 10, 2008, Petitioner filed a motion for delayed appeal in the Supreme Court of Ohio. ECF Dkt. #11, Ex. 8.

On April 23, 2008, the Supreme Court of Ohio denied Petitioner's motion. ECF Dkt. #11, Ex. 9.

**IV.**    **FEDERAL HABEAS CORPUS PETITION**

On May 9, 2008, Petitioner filed the instant petition. ECF Dkt. #1 at 5; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266, 270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to prison authorities).[3] Petitioner raises the following grounds for relief:

> GROUND ONE: The Supreme Court of Ohio prejudicially erred when it denied my motion for a delayed appeal, and dismissed its cause in violation of my United States Constitutional Fourteenth Amendment, Section I.
>
> GROUND TWO: Defense counsel for an appeal of a felony conviction renders ineffective assistance of counsel when he misrepresents the trial court record and fails to present facts of evidence for the court's review on a direct appeal. Thus, in violation of my Federal and State Constitutional right.

---

[3] Although Respondent does not raise the AEDPA statute of limitations as a defense, the undersigned notes that Respondent's brief incorrectly represents the filing date of the petition as May 13, 2008. ECF Dkt. #7 at 7. The undersigned further notes that a district court may raise the AEDPA statute of limitations sua sponte:"[D]istrict courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006). Accordingly, counsel should be careful to reflect the correct filing date in briefs, even when the AEDPA statute of limitations has not been raised by a party.

> GROUND THREE: The Lake County Eleventh District Court of Appeals prejudicially erred when its conclusion of its written opinion and judgment was not based on facts derived from the trial court's proceedings.
>
> GROUND FOUR: The trial court prejudicially erred when it permitted the interrogating Police Officer to testify about what the appellant allegedly said during a custodial interrogation where the appellant did not voluntarily, knowingly, and intelligently waive his Miranda right to remain silent or his Fifth Amendment right against self-incrimination.
>
> GROUND FIVE: Defense counsel rendered ineffective assistance of trial counsel in violation of my Federal and State Constitutional rights.
>
> GROUND SIX: The trial court prejudicially erred because its verdict was based upon insufficient evidence.
>
> GROUND SEVEN: The trial court prejudicially erred because its verdict went against the manifest weight of evidence.

ECF Dkt. #1. On October 3, 2008, Respondent filed a return of writ. ECF Dkt. #11. On December 1, 2008, Petitioner filed a reply. ECF Dkt. #16.

## V. PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. § 2244(d)(1). The AEDPA statute of limitations is not at issue in this case. However, Respondent contends that Petitioner's claims are procedurally defaulted because he failed to timely appeal to the Ohio Supreme Court and his motion for delayed appeal before that court was denied. ECF Dkt. #7 at 12-14.

### B. **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). Under the *Maupin* test, a reviewing court must decide:

(1) whether the petitioner failed to comply with an applicable state procedural rule;

(2) whether the state courts actually enforced the state procedural sanction;

(3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d

412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default; it is "some objective factor external to the defense" that prevented the petitioner's compliance with a state procedural rule. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). "Prejudice" is actual harm resulting from the alleged constitutional violation. *Magby*, 741 F.2d at 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

> Simply stated, a federal court may review federal claims:
>> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## VI.   ANALYSIS

### A.   Motion for Delayed Appeal in the Supreme Court of Ohio

#### 1.   Procedural Default - *Maupin* Factors 1-3

Respondent asserts that the instant petition is procedurally defaulted because Petitioner failed to present a timely appeal to the Supreme Court of Ohio and that the court denied his motion for delayed appeal. ECF Dkt. # 11 at 8-10.

In order to determine whether procedural default bars the instant petition, the undersigned must apply the four-pronged *Maupin* test. The undersigned recommends that the Court find that the first prong of the *Maupin* test is met because Petitioner failed to comply with the applicable procedural rules of the Ohio Supreme Court. Rule II, Section 2(A)(1)(a) of the Rules of Practice for the Ohio Supreme Court requires a party to file a notice of appeal with the Ohio Supreme Court within forty-five days of the entry of judgment from which he is appealing. Ohio S.Ct. Prac. R. II, § 2(A)(1)(a). There is no indication in the record that Petitioner filed such a notice. Therefore, he has failed to comply with a procedural rule.

The second *Maupin* factor is satisfied because the Ohio Supreme Court did indeed enforce the procedural bar by denying Petitioner's motion for a delayed appeal.

The third factor is also met because the Supreme Court's denial of Petitioner's motion for a delayed appeal constitutes a procedural ruling that bars federal review of the merits of the petition. In *Barkley v. Konteh*, Judge Gwin held that "By its very nature, a denial of a motion for leave to file a delayed appeal is a denial solely on procedural grounds even if the court does not expressly cite the procedural bar in its denial. Second, courts have held that a denial of a request for a delayed

appeal is a procedural default without merits review." 240 F.Supp.2d 708, 712 (N.D. Ohio 2002)(citations omitted); *see also Bonilla*, 370 F.3d at 497. Accordingly, the denial of Petitioner's motion for delayed appeal is an adequate and independent ground to foreclose review of the merits of his petition in the federal habeas court. *Id.*

### 2. **Procedural Default - *Maupin* Factor 4 - Cause and Prejudice**

Since prongs one, two and three of *Maupin* are met, the instant petition will be barred unless Petitioner can show cause for his default and prejudice resulting from the constitutional violation. For cause, Petitioner contends that he had 8 days in which to prepare and file a timely appeal to the Supreme Court of Ohio because he requested documents from his attorney, but his attorney was out of town and did not respond to his request until January 30, 2008. ECF Dkt. #16 at 2-3. Petitioner further contends that he was in prison at the time, had no legal experience, has a learning disability, and that the access to prison library is very limited. *Id.*

Even assuming, arguendo, that Petitioner required the documents he sought from his attorney prior to filing a notice of appeal, Petitioner's arguments lack merit because he does not provide the Court with evidence of when he initially requested those documents. Actually, Attorney Patton's letter indicates that Petitioner requested them on January 27, 2008 – over a month after the appellate court affirmed his conviction on December 24, 2007 (ECF Dkt. #11, Ex. 7) and less than two weeks before his notice of appeal to the Supreme Court of Ohio was due. *See* ECF Dkt. 16, Attached Letter from Atty. David. V. Patton ("I received your letter of January 27, 2008. In response, please find enclosed copies of the following items:"). The fact that Petitioner had only 8 days to file his appeal appears to be the result of his own delay in requesting his documents from his attorney. Therefore, Petitioner's delay in filing his notice of appeal cannot be attributed to anyone but himself.     Petitioner's claims of cause based upon his incarceration, pro se status, and limited access to the prison library also lack merit. Similar claims have been squarely addressed and rejected by the Sixth Circuit. *See Bonilla*, 370 F.3d at 498. ("First, Bonilla's pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. *See Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir.1995). Second, Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his

-10-

procedural default. *See id.* . . . Fourth, the fact that Bonilla's time in the prison law library was limited to four hours per week was insufficient to establish cause to excuse his procedural default. Additionally, Bonilla does not indicate why he required additional time to conduct legal research and how his limited law library time prevented him from filing a timely notice of appeal."). Accordingly, the undersigned recommends that the Court find that Petitioner has not established cause for failing to comply with the state's filing requirements.

Petitioner contends that he was prejudiced when the Supreme Court of Ohio denied his motion for delayed appeal without good cause and deprived him of liberty, due process and "equal rights and protection of the law." ECF Dkt. #16 at 3. Since Petitioner has failed to establish cause, the undersigned recommends that the Court find that it is unnecessary to determine whether he was prejudiced by the Supreme Court of Ohio's decision. *See Smith*, 477 U.S. at 533.

### B.     Extraordinary Circumstances

Beyond *Maupin*, the Court can still consider the instant petition if the Court determines that it is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent..." *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). The Sixth Circuit Court of Appeals explained that the "actual innocence" exception, or the "fundamental miscarriage of justice" gateway, is open to a petitioner who submits new evidence showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004), quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)(quoting *Murray,* 477 U.S. at 496. The Sixth Circuit held that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*

Although Petitioner contends that he is actually innocent of the crime for which he was convicted (ECF Dkt. #16 at 4 ("I did not commit the said crime. . .")), he has produced no evidence to carry his burden in that respect. Therefore, his perfunctory claim of actual innocence should fail.

**VII.** **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition with prejudice.


Date: April 17, 2009                         /s/ ***George J. Limbert***
                                            GEORGE J. LIMBERT
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).